LOAN # 0015220007

# "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

 FloridaRealtors®
The Voice for Real Estate® in Florida

1* **PARTIES:** _____ DROISE VALDES and YISAY REYES _____ ("Seller"),

2* and _____ MARIA VICTORIA BRANDON _____ ("Buyer"),

3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal

4 Property (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale

5 And Purchase and any riders and addenda ("Contract"):

6 **1. PROPERTY DESCRIPTION:**

7* (a) Street address, city, zip: _____ 14918 SW 10 ST  MIAMI, FLORIDA  33178 _____

8* (b) Property is located in: MIAMI - DADE County, Florida. Real Property Tax ID No: _____ 30-49-09-002-00-50 _____

9* (c) Legal description of the Real Property: GRAND LAKES PHASE PB 159-69 T-21078 LOT-5 BLK-27

10*

11 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and

12 attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.

13 (d) Personal Property: The following items owned by Seller and existing on the Property as of the date

14 of the initial offer are included in the purchase ("Personal Property"): (i) range(s)/oven(s), dishwasher(s),

15 disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door

16 openers, and security gate and other access devices; and (ii) those additional items checked below. If

17* additional details are necessary, specify below. **If left blank, the item below is not included:**

- [x] Refrigerator(s)
- [x] Microwave oven
- [x] Washer
- [x] Dryer
- [ ] Stand-alone ice maker
- [ ] Smoke detector(s)
- [ ] Security system
- [ ] Window/wall a/c
- [ ] Generator
- [ ] Pool barrier/fence
- [ ] Pool equipment
- [ ] Pool heater
- [ ] Spa or hot tub with heater
- [ ] Above ground pool
- [ ] Storage shed
- [ ] TV antenna/satellite dish
- [ ] Water softener/purifier
- [ ] Storm shutters and panels

18 The only other items of Personal Property included in this purchase, and any additional details regarding

19* Personal Property, if necessary, are: RANGE-E, REFRIGERATOR, DISHWASHER, MICROWAVE, WASHER

20* AND DRYER

21 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.

22* (e) The following items are excluded from the purchase: _____

23*

24* **2. PURCHASE PRICE** (U.S. currency): ...................................................... $ _____ 290,000.00

25* (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) $ _____ 1,000.00

26 The initial deposit made payable and delivered to "Escrow Agent" named below

27* (CHECK ONE): [ ] accompanies offer or [x] is to be made upon acceptance (Effective

28* Date) or [ ] is to be made within _____ (if blank, then 3) days after Effective Date

29* Escrow Agent Information: Name: _____ LAW OFFICE OF ILEANA GARCIA

30* Address: _____ 2121 SW 3 ST  MIAMI, FLORIDA _____ Phone: _____ 305  858-3753

31* E-mail: _____ Fax: _____

32* (b) Additional deposit to be delivered to Escrow Agent within _____ (if blank, then 3)

33* days after Effective Date........................................................................ $ _____

34 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit").

35* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8... $ _____ 00

36* (d) Other: _____ CASH SALE _____ ....... $ _____

37 (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire

38* transfer or other COLLECTED funds........................................................ $ _____ 289,000.00

39 NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.

40 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**

41* (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before _____

42* _____ N/A _____, this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.

43 Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the

44 counter-offer is delivered.

45 (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or

46 initialed this offer or final counter-offer ("Effective Date").

47 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur

48 and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered

49* ("Closing") on 30 DAYS AFTER _____ ("Closing Date"), at the time established by the Closing Agent.

SELLER'S LENDER APPROVAL LETTER

Buyer's Initials _____ Page 1 of 10 Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 047612-600137-3320019

formsimplicity

50  5. **EXTENSION OF CLOSING DATE:**
51      (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA)
52          notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements,
53          not to exceed 7 days.
54      (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes:
55          (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners'
56          insurance, to become unavailable prior to Closing. Closing will be extended a reasonable time up to 3 days
57          after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind,
58          Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not
59*         occurred within _____ (if left blank, 14) days after Closing Date, then either party may terminate this
60          Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby
61          releasing Buyer and Seller from all further obligations under this Contract.
62  6. **OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall at Closing, have removed all
63      personal items and trash from the Property and shall deliver occupancy and possession, along with all keys,
64      garage door openers, access devices and codes, as applicable, to Buyer.  If Property is intended to be rented or
65      occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant
66      to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from
67      date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have
68      accepted Property in its existing condition as of time of taking occupancy.
69*  7. **ASSIGNABILITY:** (CHECK ONE) Buyer ☐ may assign and thereby be released from any further liability
70*     under this Contract; ☐ may assign but not be released from liability under this Contract; or ☐ may not assign
71      this Contract.

72                                                    FINANCING
73  8. **FINANCING:**
74*     ☐ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing
75         contingency to Buyer's obligation to close.
76      ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA
77*         ☐ VA loan on the following terms within _____ (if blank, then 30) days after Effective Date ("Loan
78*         Commitment Date") for: (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
79*         the principal amount of $ _____ or _____ % of the Purchase Price, at an initial interest rate
80*         not to exceed _____ % (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a
81*         term of _____ years ("Financing").

82*        Buyer will make mortgage loan application for the Financing within _____ (if blank, then 5) days after
83         Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing
84         ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about
85         the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and
86         Buyer's lender to disclose such status and progress to Seller and Broker.

87         If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written
88         notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
89         further obligations under this Contract.

90         If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of
91         this financing contingency, then, after Loan Commitment Date Seller may terminate this Contract by
92         delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and
93         Seller from all further obligations under this Contract.

94         If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not
95         thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default;
96         (2) Property related conditions of the Loan Commitment have not been met (except when such conditions
97         are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is
98         insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of
99         Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller
100        from all further obligations under this Contract.
101*    ☐ (c) Assumption of existing mortgage (see rider for terms).
102*    ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

Buyer's Initials _____ _____          Page 2 of 10          Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

CLOSING COSTS, FEES AND CHARGES

103
104 9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:
105*    (a) COSTS TO BE PAID BY SELLER:
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Other: _____
- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees

106     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
107     a sum equal to 125% of estimated cost to meet the AS IS Maintenance Requirement shall be escrowed at
108     Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall
109     pay such actual costs. Any unused portion of escrowed amount shall be returned to Seller.

110*    (b) COSTS TO BE PAID BY BUYER:
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Other: _____
- Loan expenses
- Appraisal fees
- Buyer's Inspections
- Buyer's attorneys' fees
- All property related insurance

111*    (c) TITLE EVIDENCE AND INSURANCE: At least ___ (if blank, then 5) days prior to Closing Date, a title
112     insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
113     exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
114     STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title
115     insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after
116     Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search,
117     and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below
118     (CHECK ONE):
119*     ☒ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges
120     for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts
121     shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
122*     ☐ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
123     services related to Buyer's lender's policy, endorsements, and loan closing; or
124*     ☐ (iii) [MIAMI-DADE/BROWARD REGIONAL PROVISION]: Seller will furnish a copy of a prior owner's policy
125     of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
126     which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and
127     (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's
128     owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than
129*     $ _____ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing
130     Agent.
131    (d) SURVEY: At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed
132     and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a
133     copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
134*    (e) HOME WARRANTY: At Closing, ☐ Buyer ☐ Seller ☒ N/A will pay for a home warranty plan issued by
135*     _____ at a cost not to exceed $_____. A home
136     warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
137     appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
138    (f) SPECIAL ASSESSMENTS: At Closing, Seller will pay: (i) the full amount of liens imposed by a public body
139     ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
140     ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
141     improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
142     imposed on the Property before Closing. Buyer will pay all other assessments. If special assessments may
143     be paid in installments (CHECK ONE):
144*     ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after
145         Closing. Installments prepaid or due for the year of Closing shall be prorated.
146*     ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
147     IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
148     This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
149     (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to
150     STANDARD K.

Buyer's Initials _____     Page 3 of 10      Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

DISCLOSURES

151
152 10. DISCLOSURES:
153     (a) RADON GAS: Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
154         sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
155         exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
156         radon and radon testing may be obtained from your county health department.
157     (b) PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure,
158         Seller does not know of any improvements made to the Property which were made without required
159         permits or made pursuant to permits which have not been properly closed.
160     (c) MOLD: Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
161         desires additional information regarding mold, Buyer should contact an appropriate professional.
162     (d) FLOOD ZONE; ELEVATION CERTIFICATION: Buyer is advised to verify by elevation certificate which flood
163         zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
164         improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
165         or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may
166         terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which
167         Buyer accepts existing elevation of buildings and flood zone designation of Property.
168     (e) ENERGY BROCHURE: Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
169         required by Section 553.996, F.S.
170     (f) LEAD-BASED PAINT: If Property includes pre-1978 residential housing, a lead-based paint rider is
171         mandatory.
172     (g) HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS
173         CONTRACT    UNTIL    BUYER    HAS    RECEIVED    AND    READ    THE    HOMEOWNERS'
174         ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.
175     (h) PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
176         PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED
177         TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
178         IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
179         PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
180         COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
181     (i) TAX WITHHOLDING: If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax
182         Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash
183         at Closing.
184     (j) SELLER DISCLOSURE: Seller knows of no facts materially affecting the value of the Real Property which are
185         not readily observable and which have not been disclosed to Buyer. Except as stated in the preceding sentence
186         or otherwise disclosed in writing: (1) Seller has received no written or verbal notice from any governmental
187         entity or agency as to a currently uncorrected building, environmental or safety code violation; and (2) Seller
188         extends and intends no warranty and makes no representation of any type, either express or implied, as to the
189         physical condition or history of the Property.

190             PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS
191 11. PROPERTY MAINTENANCE: Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
192     Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date
193     ("AS IS Maintenance Requirement").
194 12. PROPERTY INSPECTION; RIGHT TO CANCEL: *UPON SHORT-SALE APPROVAL FROM LENDER*
195*    (a) PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___A___ (if blank, 15) days from
196        Effective Date ("Inspection Period") within which to have such inspections of the Property performed
197        as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that
198        the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice
199        of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this
200        Contract, the Deposit paid shall be immediately returned to Buyer, thereupon, Buyer and Seller shall
201        be released of all further obligations under this Contract; however, Buyer shall be responsible for
202        prompt payment for such inspections, for repair of damage to, and restoration of, the Property
203        resulting from such inspections, and shall provide Seller with paid receipts for all work done on the
204        Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises
205        the right to terminate granted herein, Buyer accepts the physical condition of the Property and any
206        violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but
207        subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any
208        and all repairs and improvements required by Buyer's lender.

Buyer's Initials _____    Page 4 of 10    Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

209    (b) WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or on Closing Date prior
210       to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and
211       follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
212       Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS
213       Maintenance Requirement and has met all other contractual obligations.
214    (c) SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS: If Buyer's
215       inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to
216       Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control
217       relating to improvements to the Property which are the subject of such open or needed Permits, and shall
218       promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to
219       resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary
220       authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates
221       of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or
222       become obligated to expend, any money.
223    (d) ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES: At Buyer's option and
224       cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
225       to Buyer.

ESCROW AGENT AND BROKER

227 13. ESCROW AGENT: Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
228     and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
229     within the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions
230     of this Contract. Failure of funds to become COLLECTED shall not excuse Buyer's performance. When conflicting
231     demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent
232     may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties
233     or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow
234     until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall
235     determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction
236     of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such
237     action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate,
238     except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate
239     broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve
240     escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.
241     Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
242     or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
243     attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent.
244     Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is
245     due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing
246     or termination of this Contract.
247 14. PROFESSIONAL ADVICE; BROKER LIABILITY: Broker advises Buyer and Seller to verify Property condition,
248     square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
249     professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
250     and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
251     Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
252     public records. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND
253     GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND
254     FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,
255     WRITTEN OR OTHERWISE) OF BROKER. Buyer and Seller (individually, the "Indemnifying Party") each
256     individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
257     employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees
258     at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection
259     with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
260     information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
261     failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
262     beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
263     recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
264     provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such
265     vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors
266     and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not
267     relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,

268 Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this
269 Contract.

## DEFAULT AND DISPUTE RESOLUTION

271 **15. DEFAULT:**
272 (a) BUYER DEFAULT: If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
273 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
274 Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
275 Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
276 obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
277 to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon
278 default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
279 Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay
280 to Cooperating Broker.
281 (b) SELLER DEFAULT: If for any reason other than failure of Seller to make Seller's title marketable after
282 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
283 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
284 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
285 performance. This Paragraph 15 shall survive Closing or termination of this Contract.
286 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
287 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
288 settled as follows:
289 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
290 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under
291 Paragraph 16(b).
292 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
293 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
294 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
295 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
296 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16
297 shall survive Closing or termination of this Contract.
298 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
299 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
300 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
301 recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
302 the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

304 **18. STANDARDS:**
305 A. TITLE:
306 (i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS: Within the time period provided in
307 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
308 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or
309 before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the
310 amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
311 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
312 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat
313 or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry;
314 (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in
315 width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent
316 years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum);
317 provided, that none prevent use of the Property for RESIDENTIAL PURPOSES. If there exists at Closing any
318 violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be
319 determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with
320 law.
321 (ii) TITLE EXAMINATION: Buyer shall have 5 days after receipt of Title Commitment to examine it and notify
322 Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it
323 is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after
324 date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period")
325 after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller,
326 Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will

Buyer's Initials _____  _____          Page 6 of 10          Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

327
328 deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will
329 close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's
330 notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of
331 Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days
332 within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure
333 Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date
334 has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or
335 (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from
336 all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects,
337 and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
338 thereby releasing Buyer and Seller from all further obligations under this Contract.
339 B. SURVEY: If Survey discloses encroachments on the Real Property or that improvements located thereon
340 encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable
341 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such
342 matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than
343 Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey
344 shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior
345 survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
346 preparation of such prior survey, to the extent the affirmations therein are true and correct.
347 C. INGRESS AND EGRESS: Seller represents that there is ingress and egress to the Real Property and title to
348 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
349 D. LEASES: Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and
350 estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent
351 and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease
352 Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by
353 Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s)
354 to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver
355 written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing
356 Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
357 further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who
358 shall assume Seller's obligation thereunder.
359 E. LIENS: Seller shall furnish to Buyer at Closing an affidavit attesting: (i) to the absence of any financing
360 statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs
361 to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or
362 repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general
363 contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all
364 such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for
365 improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid
366 or will be paid at Closing.
367 F. TIME: Calendar days shall be used in computing time periods. Any time periods provided for in this Contract
368 which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m.
369 (where the Property is located) of the next business day. Time is of the essence in this Contract.
370 G. FORCE MAJEURE: Buyer or Seller shall not be required to perform any obligation under this Contract or be
371 liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
372 prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
373 transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of
374 Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in
375 part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force
376 Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent
377 performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this
378 Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer
379 and Seller from all further obligations under this Contract.
380 H. CONVEYANCE: Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
381 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described
382 in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by
383 absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.
384 I.    CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:
385 (i) LOCATION: Closing will take place in the county where the Real Property is located at the office of the
386 attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title

Buyer's Initials _____  _____        Page 7 of 10        Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

387
388 insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.
389 (ii) CLOSING DOCUMENTS: At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale,
390 certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective
391 instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract.
392 Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements,
393 survey, base elevation certification, and other documents required by Buyer's lender.
394 (iii) PROCEDURE: The deed shall be recorded upon COLLECTION of all closing funds. If the Title
395 Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the
396 escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, subject to
397 COLLECTION of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to
398 Seller.
399 J. ESCROW CLOSING PROCEDURE: If Title Commitment issued pursuant to Paragraph 9(c) does not provide
400 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow
401 and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period
402 of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer
403 shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
404 of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds
405 paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with
406 such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to
407 Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the
408 Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be
409 available to Buyer by virtue of warranties contained in the deed or bill of sale.
410 K. PRORATIONS; CREDITS: The following recurring items will be made current (if applicable) and prorated as of
411 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
412 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
413 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in
414 which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by
415 prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to
416 Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current
417 year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing
418 occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be
419 prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then
420 taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of
421 year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated
422 based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which,
423 request shall be made to the County Property Appraiser for an informal assessment taking into account available
424 exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of
425 current year's tax bill. This STANDARD K shall survive Closing.
426 L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH: Seller
427 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
428 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
429 M. RISK OF LOSS: If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
430 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
431 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
432 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
433 cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of
434 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
435 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
436 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
437 Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
438 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
439 N. 1031 EXCHANGE: If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with
440 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
441 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
442 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
443 upon, nor extended or delayed by, such Exchange.
444 O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES: Neither this Contract nor any
445 notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the
446 parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural

Buyer's Initials _____  _____          Page 8 of 10          Seller's Initials _____  _____

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original.

P. INTEGRATION; MODIFICATION: This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

Q. WAIVER: Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS: Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

T. LOAN COMMITMENT: "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.

U. APPLICABLE LAW AND VENUE: This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in which the Real Property is located.

X. BUYER WAIVER OF CLAIMS: *Buyer waives any claims against Seller and, to the extent permitted by law, against any real estate licensee involved in the negotiation of this Contract, for any defects or other damage that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer.*

ADDENDA AND ADDITIONAL TERMS

19. ADDENDA: The following additional terms are included in the attached addenda and incorporated into this Contract (Check if applicable):

| | | | |
|---|---|---|---|
| ☐ A. Condominium Assn. | ☐ L. RESERVED | ☐ R. Rezoning | ☐ Y. Seller's Attorney Approval |
| ☐ B. Homeowners' Assn. | | ☐ S. Lease Purchase/ Lease Option | ☐ Z. Buyer's Attorney Approval |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | | |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control Line | ☐ T. Pre-Closing Occupancy | ☐ AA. Licensee-Personal Interest in Property |
| ☐ E. FHA/VA Financing | | | |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ U. Post-Closing Occupancy | ☐ BB. Binding Arbitration |
| ☐ G. Short Sale | ☐ P. Pre-1978 Housing Statement (Lead Based Paint) | ☐ V. Sale of Buyer's Property | ☐ Other _____ |
| ☐ H. Homeowners' Insurance | | | |
| ☐ I. FIRPTA | | ☐ W. Back-up Contract | |
| ☐ J. Interest-Bearing Acct. | ☐ Q. Housing for Older Persons | ☐ X. Kick-out Clause | |
| ☐ K. RESERVED | | | |

20. ADDITIONAL TERMS: _THIS CONTRACT IS SUBJECT TO SELLER'S LENDER APPROVAL._
_THIS SALE IS SUBJECT TO SELLER LENDER AGREES TO RELEASE ITS SECURITY_
_INTEREST IN THE ABOVE COLLATERAL UPON RECEIPT OF NET AMOUNT_
_IN U.S. CERTIFIED FUNDS AS PER APPROVED HUD. ANY DEFICIENCY_
_BALANCE REMAINING ON THE LOAN SECURED BY THE ABOVE REFERENCED_
_PROPERTY WILL BE WAIVED OTHERWISE SELLER WILL SIGN THE BANK_
_APPROVAL_

Buyer's Initials _____    Page 9 of 10    Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

494                    COUNTER-OFFER/REJECTION

495* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
496 deliver a copy of the acceptance to Seller).
497* ☐ Seller rejects Buyer's offer.

498 THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE
499 OF AN ATTORNEY PRIOR TO SIGNING.

500 THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.

501 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
502 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
503 *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
504 *persons.*

505 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
506 BE COMPLETED.

507* Buyer: _MARIA VICTORIA BRADON_    Date: _1/26/2014_ / _7/06/2013_

508* Buyer: _____    Date: _____

509* Seller: _____ _1-27-14_    Date: _7/8/2013_

510* Seller: _____ _1-27-14_    Date: _7/8/2013_

511 Buyer's address for purposes of notice      Seller's address for purposes of notice
512* _____    _14918 SW 10 ST_
513* _____    _MIAMI - FL 33178_
514* _____

515 BROKER: Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
516 to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
517 to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
518 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
519 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
520 made by Seller or Listing Broker to Cooperating Brokers.

                                             Lic.#.

521* _FRANCISCO RIVERA_      _MERCEDES HURTADO 3090130_
522 Cooperating Sales Associate, if any      Listing Sales Associate

523* _KELLER WILLIAMS REALTY 3%_      _AMERIFIRST REALTY OF FLORIDA 3%_
524 Cooperating Broker, if any      Listing Broker

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

## Short Sale Addendum to Purchase and Sale Contract

The following provisions are made part of the Contract for Sale and Purchase or Residential Sale and Purchase Contract between

DROISE VALDES  YISIAY REYES _____ (Seller) and

MARIA VICTORIA BRANDON _____ (Buyer) concerning the Property located

at 14918 SW 10 ST MIAMI-FLORIDA-33178 _____

1. **Approval of the Lender:** This Contract is contingent upon: (a) the Seller's lender(s) and/or other lien holder(s) (collectively the "Lender") approval of the purchase price, terms of the Contract and the HUD-1 settlement statement (b) the Lender's agreement to accept a payoff which is less than the balance due on the loan or other indebtedness and (c) the Lender's release and satisfaction of the mortgage(s) and/or other lien(s) upon receipt of discounted payoff. Seller agrees to disclose or provide any requested information or documentation to the Lender for the purpose of obtaining approval of this shortsale Contract. If Seller obtains an approval from Lender, Seller shall deliver written notice of the approval to the Buyer no later than 3 days after receipt of the approval. If Seller does not deliver written notice to Buyer that Lender has approved the purchase price and contract terms within _____ days from Effective Date ("Approval Deadline") (30 days if left blank), or if Lender rejects this Contract prior to the expiration of the Approval Deadline, either party may thereafter cancel the Contract by delivering written notice to the other. However, such right to cancel shall cease to exist if Seller delivered written notice that the Contract has been approved by the Lender.

2. **Effective Date and Time for Acceptance:** The Effective Date and the time for acceptance of all offers and counteroffers under the Contract shall be computed as set forth in the Contract.

3. **Time Periods:** (check one)

[X] Except for Approval Deadline, all time periods for inspections, contingencies, deposit(s) and other obligations under the Contract shall commence from the date Seller delivers written notice to Buyer that the Contract has been approved by the Lender

[ ] All time periods under the Contract shall commence from the Effective Date under the Contract.

4. **Acknowledgment by Buyer:** Buyer acknowledges that the Lender is not party to the Contract and therefore is not obligated to approve the Contract. Buyer further acknowledges that Seller and Broker are not liable for delays caused by Lender; failure of the Lender to approve the Contract, failure of the Lender to complete the short sale after approving the Contract or any costs and expenses (such as payments for loan applications, inspections, and appraisals) associated with the delays or Lender's failure to approve the Contract or complete the Short Sale after approving the Contract.

5. **Seller Acknowledgment:** Seller acknowledges that a short sale may result in Lender requiring the Seller to pay the difference of what was owed as a deficiency judgment, that the Lender's forgiveness of debt may be a taxable event to the Seller and that Seller's credit may be negatively impacted. Seller also acknowledges that Lender may require Seller to bring funds to Closing or to execute a promissory note. Seller is advised to consult with appropriate financial, legal and tax professionals. Seller agrees to rely on such professionals and not Broker for tax and legal advice. Seller agrees to release Broker and its associates from all liability regarding the consequences of a short sale.

6. **Multiple Offers:** (check one) [ ] During the term of this Contract, Seller may not accept any back-up offers or enter into any back-up contracts unless otherwise instructed, directed or required by Lender. [ ] During the term of this Contract, Seller may accept a back-up offer or enter into a back-up contract that is conditioned upon termination of Contract.

This addendum amends the above-referenced Contract between Seller and Buyer. All other non-conflicting provisions of that agreement remain in full force and effect.

_____ 1-27-14  7/06/2013
MARIA VICTORIA BRANDON    DATE

_____
DATE

_____ 1-27-2014  7-8-13
SELLER                    DATE

_____ 1-27-2014  7-8-13
SELLER                    DATE

SSA-3  Rev. 12/2010    © 2010  Florida REALTORS ®    All Rights Reserved